IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRIS DANIELS, on behalf of himself )    2:07-cv-1501-GEB
and all others similarly situated,  )
                                    )    ORDER[1]
          Plaintiff,                )
                                    )
     v.                             )
                                    )
FINISH LINE, INC.,                  )
                                    )
          Defendant.                )
_____)

Defendant Finish Line seeks summary adjudication on Plaintiff Kris Daniels' ("Daniels") first, second, third, fourth, fifth, ninth, and tenth claims of his complaint, all of which derive

/ / /

---

[1] Finish Line also moves to strike Daniels' notice of filing supplemental deposition testimony from Cindy Cook ("Cook"), the Vice President of Human Resources at Finish Line. Daniels submitted the notice of filing supplemental deposition testimony on September 15, 2008, one week after the motion was heard on September 8, 2008. Since Cook's supplemental deposition testimony is considered, the motion to strike is denied.

1

from Daniels' allegations that he did not receive adequate compensation during his employment at Finish Line.  Finish Line argues Daniels has neither shown he ever worked without proper compensation nor that Finish Line's time keeping records which controvert Daniels' under payment claims are inaccurate or inadequate.

## DISCUSSION[2]

"An employee [suing] for unpaid . . . wages or unpaid overtime compensation, . . . has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-686 (1946).  However, "if an employer has failed to keep proper and accurate records . . . the solution is not to penalize the employee.  Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court [has] held that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Allen v. Board of Public Educ. For Bibb Cty., 495 F.3d 1306, 1315-1316 (11th Cir. 2007) (quoting Anderson; internal citations omitted).

Daniels argues Finish Line's records are inaccurate and that he has controverted Finish Line's motion with evidence from which a
/ / /

---

[2] "Summary judgment is only appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Taylor v. List, 880 F.2d 1040, 1044 (9th Cir. Nev. 1989) However, the moving party cannot defeat "[a] summary judgment motion [ ] by relying solely on conclusory allegations unsupported by factual data." Id. at 495.

2

reasonable inference can be drawn that he was not compensated for all hours he worked.

Daniels worked at Finish Line's Roseville, California retail store from the beginning of November 2006 until the beginning of February 2007.  (Opp'n at 8:2-4.)  Daniels alleges during the course of this employment, Finish Line failed to adequately compensate him as a result of its managers engaging in "time-maintenancing," which occurred when its managers improperly removed recorded hours from Daniels' timecard and thereby caused the number of hours reflected to be less than what Daniels actually worked.  (Opp'n at 8:5-6.)  Daniels also argues Finish Line managers forced him to work "off the clock" by asking him to work at unscheduled times which were not recorded (Id.); and, since Finish Line did not properly record his hours, he also failed to receive overtime pay to which he was entitled.  (Id. at 9:9-10.)

Daniels gave deposition testimony that he notified the Roseville store manager Randy Ust ("Ust") of his payment concerns throughout his employment, and also that other employees at that store complained to Ust about their paychecks.  However, Daniels testimony neither explains what "payment concerns" he discussed with Ust nor what "other employees at the Roseville store" said to Ust "about their paychecks."  (Pl. Depo. at 94:2-4; 96:9-15.)  Ust declares he "never received any complaints from Daniels regarding his hours worked or pay"; and that he never improperly maintenanced an employee's time card, nor forced an employee to work off the clock.  (Ust Decl. at 2:20-22; 3:5-18.)  Ust declares he only maintenanced employee time records to show less time when an employee forgot to clock out at the end of a shift.  (Id. at 3:6-8.)

3

Finish Line provides evidence from Cook, who declares that Daniels' time records show his time was only maintenanced three times during his employment: Ust added time on November 13, 2006, Daniels' first day of employment, because on Daniels first day of work he did not have an employee ID (he received his employee ID on his second day of work, November 14, 2006); on December 1, 2006, 39 minutes were subtracted; and on January 21, 2007, 36 minutes were subtracted. (Cook Decl. at 4:3-14.) Cook also declares, "[when] a manager maintenances an employee's time, the system contemporaneously records which time entry was changed, the amount of increase or reduction in time recorded, and which manager made the change." (Id. at 3:6-9.)

Daniels recollects that he worked ten or more shifts entirely without pay. (Pl. Depo. at 78:10-15.) However, Daniels fails to point to exact dates or times he worked those shifts. Daniels gave deposition testimony that he kept a record of the hours he worked at the time of his employment, but discarded those records, stating, "When you clean house, you clean house. Stuff you don't need [ ] anymore, toss it out. This was junk; I had no purpose for it no more." (Id. at 85:12-14.)

Daniels contends the Roseville store had time keeping problems, relying on records showing five occasions when his recorded hours were less than the time he was scheduled to work. (Pl. Opp'n at 14:21-23.; Gray Decl. Ex. DD.) Finish Line counters that this evidence is insufficient to support drawing a reasonable inference that Daniels worked off the clock; and controverts Daniels' contrary contention with declarations from Finish Line managers through which Finish Line explains, "business needs often drive managers to send employees home early, or even cancel entire shifts. As a result,

4

employees often do not work all the hours they are scheduled."  (D. Reply at 15:24-27.)

Daniels also provides time keeping records from the Roseville store to demonstrate he made a sale when he was clocked out of the system.  (Pl. Opp'n at 14:16-18; Gray Decl. Ex. CC.)  Finish Line counters that Daniels misunderstands the time records as the records show that another cashier completed the transaction and credited Daniels with the sale.  (D. Reply at 14:10-15; Supp. Cook Decl. ¶ 7, Ex. 1.)  Further, Cook declares it is common for employees to receive credit for sales when they are not working because an employee may receive credit for a sale when a customer checks out while the employee who assisted the customer is on a break; or also for transactions made when the employee is off-duty, such as exchanges or purchasing products on hold.  (Supp. Cook Decl. ¶ 8.)

Daniels argues that Finish Line's heavy emphasis on store employees having zero overtime at their stores resulted in employees not getting paid for overtime.  Daniels provides as support for this argument emails from corporate employees that concern Finish Line's overtime policy:  the Vice President of Stores, Al Goizueta ("Goizueta"), sent an email in April 2004 regarding overtime emphasizing that "zero means zero!!" (Gray Decl. Ex. F.); and Finish Line's Western Regional Manager, John Dickkut, sent an email encouraging managers in region 4 "to come through with [zero overtime] hours."  (Gray Decl. Ex. K.)  Daniels argues due to the strict no-overtime policy, Finish Line store managers continually maintenanced employee time cards and forced employees to work off the clock.  (Pl. Opp'n at 7:25-26.)  However, Goizueta sent an email in December 2004 stressing that managers stop the practice of maintenancing

1  "immediately." (Gray Decl. Ex. J.) Additionally, Finish Line's Store
2  Expense Manager Bryan Ramsey sent an email stating that time card
3  maintenance was occurring for the wrong reasons and that it is never
4  acceptable to work an employee off the clock. (Id. Ex. L.) Further,
5  Finish Line counters that the problem of maintenancing just involved a
6  handful of managers, as only "a fraction of one percent of Finish
7  Line's 11,373 managers have ever been the subject of a wage-and-hour-
8  complaint." (D. Reply at 12:5-7.)

9       Notwithstanding the maintenancing and off the clock evidence
10 Daniels presents showing certain Finish Line stores had time keeping
11 problems, Daniels provides no evidence from which a reasonable
12 inference can be drawn that there were similar problems at the
13 Roseville store. (Id. Exs. I, M, Q, R, S, T, V.)

14      Since Daniels "has submitted no evidence beyond bare
15 allegations and vague undocumented estimates to support his claim
16 [that Finish Line did not provide adequate compensation and that he
17 was forced to work off the clock, his opposition] is insufficient to
18 survive summary judgment." Millington v. Morrow County Bd. of
19 Comm'rs, 2007 U.S. Dist. LEXIS 74348 *19 (S.D. Ohio Oct. 4, 2007).
20 See also Harvill v. Westward Communications, L.L.C., 433 F.3d 428 (5th
21 Cir. 2005) (affirming summary judgment for defendant employer because
22 the plaintiff failed to provide evidence to substantiate her claim
23 that she worked 210 hours overtime). Compare with Brown v. Family
24 Dollar Stores of Ind., LP, 534 F.3d 593 (7th Cir. 2008)(reversing
25 summary judgment in favor of defendant employer because plaintiff
26 provided evidence that hours in the employer's time records could not
27 have been accurate because they did not conform with the hours that
28 plaintiff would have worked given the store's hours of operations.)

1      For the stated reasons, Finish Line's motion is granted on
2 Daniels' first, second, third, fourth, fifth, ninth, and tenth claims,
3 and those claims are dismissed.
4      IT IS SO ORDERED.
5 Dated:  October 30, 2008

                                _____
                                GARLAND E. BURRELL, JR.
                                United States District Judge